Judy BAXTER, Plaintiff and Appellant,

v.

CAMELOT PROPERTIES, INC., Defendant and Respondent.

No. 16955.

Supreme Court of Utah.

Jan. 9, 1981.

S. Rex Lewis, Howard, Lewis & Petersen, Provo, for plaintiff and appellant.

Ronald R. Stanger, Provo, for defendant and respondent.

HOWE, Justice:

Appeal from a judgment denying plaintiff and appellant specific performance of two agreements which she entered into with the defendant and respondent for the purchase by her of two condominium units, and also denying her damages for the alleged breach of those agreements. The parties will hereafter be referred to as they appeared in the lower court.

Early in 1977, the plaintiff, a licensed real estate agent, was employed by the defendant corporation to sell condominium units in its 90 unit project in Provo, Utah. On May 12 of that year, the plaintiff prepared and presented to the defendant two documents which are standard printed forms entitled "Sales Agreement and Deposit Receipt (Residential)." On these forms she personally offered to purchase two of the units, and the defendant, through its president, accepted these offers. The terms of the offers were that the buyer was to make a cash down payment of 10% of the sales price and to obtain a mortgage loan for the remaining 90%. The only term of the agreements in dispute in this litigation is the date on which the parties intended the sale to close. The paragraphs of the agreements entitled "closing" were left blank by the parties as to date of closing.

Plaintiff worked at selling the units for more than one year, at which time defendant became dissatisfied with her performance and hired another realtor to make the sales.

Nothing transpired as to the sales agreements on the two units until October 30, 1978, when the defendant's president wrote the plaintiff and requested that she complete the purchase within the next 10 days by depositing the 10% down payment and by making application for the 90% loan. Plaintiff did not comply with this letter, but on January 10, 1979, she sent to the defendant a document entitled "Earnest Money Receipt and Offer to Purchase," wherein she offered to purchase 20 of the units including the two which she had already agreed to purchase. The terms of this offer, however, were different from the terms of the original agreements. The price offered for the units was increased by about $3,000, and instead of the buyer being required to qualify for a loan to pay the remaining 90%, the new offer required the seller to carry a contract for this balance. This offer was not accepted by the defendant.

Thereafter, on January 23, the plaintiff, through her legal counsel, wrote a letter to the defendant stating that she was prepared to tender immediately to the closing agent the 10% down payment. The letter was silent as to whether she had made or intended to make application for the loan to cover the other 90% of the sales price. However, the letter did mention that the defendant had lately been selling certain of the units on a contract and stated that the plaintiff "would prefer to close on a contract sale with the basic terms and conditions being accepted by Camelot on other contract sales."

Finally, on February 20, the plaintiff sent to the defendant an Addendum to the origi-

nal two agreements in which she again offered more money for the two units than she had agreed to pay in the original agreements. The Addendum also provided for the defendant to carry a contract for 90% of the sales price rather than require her to obtain a loan for this amount.

The defendant made no response to the letter of January 23, or to the Addendum. Plaintiff thereafter filed this action against the defendant for specific performance of the two agreements dated May 12, 1977, or in the alternative, for damages. The trial court awarded neither specific performance nor damages to the plaintiff, but did award her $600 which she had expended in decorating the two units.

Plaintiff assails the denial of specific performance and of damages to her on the ground that the parties had orally agreed in May 1977 that the sales would not be closed and plaintiff's performance on the two units would not be due until all the other units in the project had been sold. It is undisputed that the two units were being used as display models during the sales campaign, and there was testimony that one of them was still being used as a model as late as February 1979. Therefore, plaintiff argues, her performance was not due until February 1979, and her letter of January 23 evidences her willingness to then perform the May 12, 1977, agreements even though in that letter her counsel suggested other terms to which the defendant made no response and to which it did not agree.

■ The trial court found that both parties thought that all units in the project would be sold within one year and intended that closing on the two units to be sold to the plaintiff would also take place during that year. Both the plaintiff and the defendant's president testified to that effect. That being so, it was within the right of the defendant on October 30, 1978, to make demand upon the plaintiff to close the sale on the two units. That letter requested that within 10 days she deposit with the defendant the 10% down payment and that she make application for a loan for the other 90% of the sales price. Plaintiff did not comply with either part of that request.

She did nothing until January 10, at which time she indicated that she was prepared to tender immediately the 10% down payment but did not indicate that she had applied or even would apply for the loan. Instead, she proposed that the 90% balance be carried on a contract by the defendant. The defendant did not agree to this change.

■ It avails the plaintiff nothing to argue that she should have been given until February 1979 to perform, since one of the units was being used as a model by the defendant until that month. The court having found that the parties intended that the closing would be within one year, the fact that all units were not sold within that year cannot be the basis for extending the time for the plaintiff's performance. In the first place, the delaying of the closing with the plaintiff was for the benefit of the defendant in that the two units could be used as models during the sales campaign. If the defendant wanted to waive an additional waiting period after the year had expired, it could do so and plaintiff has no ground to complain. *Eliason v. Watts*, Utah, 615 P.2d 427 (1980). *Ahrendt v. Bobbitt*, 119 Utah 465, 229 P.2d 296 (1951). It is not surprising that the defendant would not want to wait longer to close the sale to the plaintiff in light of a rising real estate market and the continuing costs of maintaining the units. Secondly, the defendant's president disagreed with the plaintiff's testimony that the two units were to be closed only after all other units had been sold. He testified that no conversations to that effect ever took place between the parties. Thus there was a conflict in the evidence on that point, and the trial court was not compelled to believe plaintiff.

Defendant's president further testified that on October 30, 1978, when he sent his letter to the plaintiff, "nearly all of the condominium units had been sold and we were trying to clean up and needed additional units," and the stockholders met and decided that the plaintiff should complete her purchase of her two units, or they should be placed on the market. That deci-

sion was well within the prerogative of the defendant. It had waited well past the one year the parties intended. It then gave the plaintiff reasonable time and opportunity to complete her purchase, but she did not tender performance as was required by the terms of the agreements.

The judgment below is affirmed. Costs awarded to respondent.

HALL and STEWART, JJ., CROCKETT, Retired Justice * and CALVIN GOULD, District Judge, concur.

---

* CROCKETT, Retired Justice, concurred in this case before his retirement.

MAUGHAN, C. J., does not participate herein. GOULD, District Judge, sat.